Filed 4/25/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037195 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C9945301) |
| v. | |
| MAXWELL MARTIN FUQUAY, | |
| Defendant and Appellant. | |

## I. STATEMENT OF THE CASE

In 2000, defendant Maxwell Martin Fuquay was found not guilty by reason of insanity (NGI) of battery with serious bodily injury, and he was committed to a state hospital. (Pen. Code, §§ 242, 243, subd. (d), 1026.5, subd. (a).)[1] Thereafter, his commitment was extended four times. (§ 1026.5, subd. (b).) On March 21, 2011, before the last extension expired, the Santa Clara County District Attorney filed a petition to extend it again. At a pretrial hearing on July 8, 2011, defense counsel waived a jury. On July 28, 2011, after a bench trial, the court sustained the petition and extended defendant's commitment to September 10, 2013.

---

[1] "Technically, once a defendant has been found not guilty by reason of insanity, he is no longer a criminal defendant, but a person subject to civil commitment." (*People v. Lara* (2010) 48 Cal.4th 216, 222, fn. 5.) We shall refer to such persons as defendants or NGIs rather than "committees" or "persons committed."

All unspecified statutory references are to the Penal Code.

On appeal from the extension order, defendant claims that the court violated his constitutional and statutory rights by failing to advise him of his right to a jury trial and conducting a bench trial without obtaining his express, personal waiver.

We affirm the extension order.

## II.  THE EXTENSION HEARING

Dr. Shakeel Khan, defendant's treating psychiatrist at Napa State Hospital (NSH), testified that defendant suffered from paranoid schizophrenia and poly-substance dependence.  He said that defendant was currently exhibiting symptoms of the disorder.  For this reason, he opined that defendant was currently dangerous and agreed with the NSH recommendation that defendant's commitment be extended.[2]  Dr. Khan reported that during the past two years, defendant had committed six assaults on fellow patients, most recently in February 2011.  He explained that the assaults stemmed at times from defendant's delusional belief that he was being raped by other patients and being targeted because of his race and sexual orientation.

Dr. Khan said that defendant's ability to recognize his symptoms and what triggers them had improved; and when he was not feeling paranoid, defendant was approachable and complied with his treatment program.  Nevertheless, Dr. Khan testified that defendant remained delusional, and as a result lacked insight into his mental illness.  He said that defendant's treatment reflected a cyclical pattern:  he would participate in treatment and work well for a time; as he felt better, he would decrease his medication; he would stop his treatment; and then his symptoms would reappear.  Recently, Dr. Khan had recommended a certain medication, but defendant refused to take it.

Defendant admitted that he suffered from paranoid schizophrenia.  He said he attended Narcotics Anonymous meetings but denied having a substance abuse problem.  Defendant claimed that recently he had been raped by other patients.  He did not believe

---

[2]  Concerning the commitment offense, Dr. Khan testified that in 1999, while defendant was hospitalized, he attacked a psychiatric nurse without provocation.

2

that it was a delusion even though hospital staff found no evidence of a sexual assault. Defendant explained that not all of his fights with other patients were his fault. He said that some were racially motivated. Defendant said he would take the drug recommended by Dr. Khan, and, if released, he would take his medication and continue his psychiatric treatment.

After hearing this testimony, the court found that defendant represented a substantial danger of harm to others due to a mental disease, defect, or disorder, sustained the petition, and extended defendant's commitment.

### III.  AN NGI COMMITMENT AND EXTENSION

Under the statutory scheme for NGI commitments, a defendant who has been committed to a state hospital after being found NGI may not be kept in actual custody longer than the maximum state prison term to which he or she could have been sentenced for the underlying offense. (§ 1026.5, subd. (a)(1).) At the end of that period, the district attorney can seek a two-year extension by filing may petition alleging that the defendant presents a substantial danger of physical harm to others because of his or her mental disease, defect, or disorder. (§ 1026.5, subds. (b)(1)-(2).) At that time, the court is required to "advise the person named in the petition of the right . . . of the right to a jury trial" (§ 1026.5, subd. (b)(3).) and conduct a jury trial "unless waived by both the person and the prosecuting attorney" (§ 1026.5, subd. (b)(4)). The person is "entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings," and all proceedings must "be in accordance with applicable constitutional guarantees." (§ 1026.5, subd. (b)(7).)[3]

---

[3] Section 1026.5, subdivision (b)(3) provides:  "When the petition is filed, the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial. The rules of discovery in criminal cases shall apply. If the person is being treated in a state hospital when the petition is filed, the court shall notify the community program director of the petition and the hearing date.

Section 1026.5, subdivision (b)(4) provides: "The court shall conduct a hearing on the petition for extended commitment. The trial shall be by jury unless waived by both

3

## IV. CONTENTS

Defendant contends the court erred in failing to advise him of his right to a jury trial, accepting counsel's waiver, and conducting a bench trial without obtaining his personal and express waiver. He claims the errors violated his statutory rights and his state and federal constitutional rights to due process and equal protection. The Attorney General argues that the court properly conducted bench trial because as a rule, counsel has exclusive authority to waive a jury trial even over an NGI's objection.

## V. FAILURE TO ADVISE[4]

As noted, subdivision (b)(3) requires a jury advisement when the petition is filed. The record reflects that the court did not directly advise defendant at the first hearing after the petition was filed; nor did the court do so at any time thereafter. This is understandable because when the petition was filed, defendant was at NSH; thereafter, defense counsel waived defendant's presence at all of the pretrial proceedings; the court did not order defendant's appearance for the purpose of an advisement; and defendant did not appear until the day of the bench trial. However, as we shall explain, the court's failure to advise does not compel reversal.

Before any judgment can be reversed for error under state law, it must appear that the error complained of "has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801.) This means that reversal is

---

the person and the prosecuting attorney. The trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless that time is waived by the person or unless good cause is shown.

Section 1026.5, subdivision (b)(7) provides, in relevant part: "The person shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees. The state shall be represented by the district attorney who shall notify the Attorney General in writing that a case has been referred under this section. If the person is indigent, the county public defender or State Public Defender shall be appointed."

[4] Hereafter, all unspecified subdivision references are to section 1026.5.

4

justified "when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Clearly counsel knew that defendant had the right to a jury trial because he expressly waived it. Moreover, where, as here, counsel waives a defendant's presence at all pretrial hearings, effectively preventing a direct judicial advisement before trial, the court may reasonably expect counsel to discuss all pertinent matters that will arise or that have arisen in pretrial hearings, including the right to a jury trial and whether to have one. "Like all lawyers, the court-appointed attorney is obligated to keep her client fully informed about the proceedings at hand, *to advise the client of his rights*, and to vigorously advocate on his behalf. [Citations.] The attorney must also refrain from any act or representation that misleads the court. (Bus. & Prof.Code, § 6068, subd. (d); Rules Prof. Conduct, rule 5–200(B).)" (*In re Conservatorship of Person of John L.* (2010) 48 Cal.4th 131, 151-152 (*John L.*), italics added.) Absent a showing to the contrary, "[a] reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211; *Conservatorship of Ivey* (1986) 186 Cal.App.3d 1559, 1566; e.g., *Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265, 272 (*Mary K.*) [where no evidence to the contrary, court may presume counsel discussed jury waiver with client before waiving on client's behalf].)

Next, the record does not show that defendant was unaware of his right. On the contrary, it suggests otherwise. This was defendant's fifth extension trial. Moreover, the record reveals that when the district attorney sought the fourth extension, defendant waived his rights and agreed to the extension. In doing so, he signed a waiver form in

which he stated that he knowingly and voluntarily waived his rights, including his right to a jury trial, after having conferred with counsel.

The record also does not show that defendant wanted a jury trial on the instant petition or that he did not authorize or agree to counsel's waiver or that he opposed or would have opposed counsel's waiver. "As a general rule, a stipulation of the attorney will be presumed to have been authorized by the client, as well in order to uphold the action of the court, as for the protection of the other party to the stipulation; but when the adverse party, as well as the court, is aware the attorney is acting in direct opposition to his client's instructions or wishes, the reason of the rule ceases, and the court ought not to act upon the stipulation, nor can the adverse party claim the right to enforce a judgment rendered by reason thereof." (*Knowlton v. Mackenzie* (1895) 110 Cal. 183, 188.)

Here, despite having been previously advised of his right to a jury trial and knowingly and intelligently waiving that right, defendant appeared in court and participated in the bench trial without objection or complaint. Under the circumstances, the record provides no basis to infer that defendant was unaware of his right to a jury trial or wanted a jury trial or that counsel overrode defendant's wish for a jury trial. Any such inferences would be speculation on our part.[5]

Last, we note that a single opinion by a psychiatric expert that the defendant is currently dangerous due to a mental disorder can constitute substantial evidence to

---

[5] However, if, in fact, defendant was unaware of his right to a jury trial and would have opposed or did oppose counsel's waiver, but the evidence to establish these facts lay outside the record on appeal, defendant had an alternative a remedy.

As a general rule, claims grounded in facts outside the record can be raised by habeas petition. (See *People v. Gray* (2005) 37 Cal.4th 168, 211; *In re Bower* (1985) 38 Cal.3d 865, 872.) A person improperly committed may resort to habeas corpus to challenge an involuntary civil commitment. (See Pen. Code, § 1473, subd. (a) ["Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint."]; see also *In re Michael E.* (1975) 15 Cal.3d 183.)

We observe that here defendant has not sought habeas relief.

support the extension of a commitment. (*People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165; *People v. Bowers* (2006) 145 Cal.App.4th 870, 879.)

Dr. Khan's testimony constituted overwhelming evidence to support a finding that defendant posed an unreasonable risk of harm to others due to his mental disorder. Defendant presented no opposing expert testimony. He did not impeach Dr. Khan in any respect. And he does not claim that Dr. Khan's opinion was speculative or that his testimony does not constitute substantial evidence. Under the circumstances, we do not find it reasonably probable defendant would have obtained a more favorable result had the court expressly advised him of his right to a jury trial on the record. (*People v. Watson, supra,* 46 Cal.2d at p. 836; cf. *People v. McClellan* (1993) 6 Cal.4th 367, 377, 378 [failure to advise about sex registration requirement harmless].)[6]

## IV. VALIDITY OF THE BENCH TRIAL

### A. Personal Waiver

Defendant notes that subdivision (b)(3) requires that the court to advise "the person named in the petition" of the right to a jury trial; and subdivision (b)(4) requires the court to conduct a jury trial "unless waived by both the person and the prosecuting attorney." (Italics added.) According to defendant, these provisions mean that the right to a jury trial is "personal to the defendant," and therefore, the phrase "the person," especially in subdivision (b)(4), refers *only* to the defendant. Thus, he argues that the court must conduct a jury trial unless the defendant personally waives a jury. In other

---

[6] We do not intend to suggest that it was improper or inappropriate for counsel to waive defendant's presence or that the court had a duty to order defendant's presence in order to directly advise him. However, a direct advisement is not the only way for the court to ensure that an NGI is made aware of the right to a jury trial. In our view, the practical difficulty in advising an NGI committed to a state hospital could easily be solved with an advisement and waiver form for the NGI read and sign. (See *People v. Ramirez* (1999) 71 Cal.App.4th 519, 521-522 [waiver form proper substitute for judicial advisement].)

words, only the defendant can waive a jury trial, and, conversely, a waiver by counsel is not valid or effective.

In *People v. Otis* (1999) 70 Cal.App.4th 1174 (*Otis*), the court dealt with section 2966, subdivision (b), which requires a jury trial when a person challenges certification as a mentally disordered offender (MDO) unless the jury is "waived by both the person and the district attorney." There, counsel waived a jury trial. The defendant objected and requested a jury trial, but at the time, he was delusional and said he was being sexually assaulted by invisible police. The court denied the request. (*Id.* at pp. 1175-1176.)

In upholding counsel's waiver, the court found that "nothing in the requirement that the waiver must be by 'the person' precludes the person's attorney from acting on his behalf" and noted that "[t]he Legislature did not say the waiver had to be made 'personally.' " (*Otis*, *supra*, 70 Cal.App.4th at p. 1176.) The court opined that if the Legislature had intended to require a personal waiver, it would have made its intent clear and unambiguous. (*Ibid*.)

The court further explained that "[s]ection 2966 concerns persons who have been found by the Board of Prison Terms to be mentally disordered. The Legislature must have contemplated that many persons, *such as Otis*, might not be sufficiently competent to determine their own best interests. There is no reason to believe the Legislature intended to leave the decision on whether trial should be before the court or a jury in the hands of *such a person*." (*Otis, supra*, 70 Cal.App.4th at p. 177, italics added.)

In *People v. Montoya* (2001) 86 Cal.App.4th 825 (*Montoya*), the court reached the same conclusion concerning identical language in section 2972, subdivision (a), which requires a jury trial on an MDO commitment extension unless waived "by the person and the district attorney." There too, counsel waived a jury. (*Id.* at pp. 828-829.) In upholding counsel's waiver, the court followed *Otis*. It noted that the statutory language did not expressly require a personal waiver or clearly preclude a waiver by counsel. The court also agreed that the Legislature could not have intended to require a personal

8

waiver and thereby deny counsel the authority to act on behalf of an incompetent MDO such as the MDO in *Otis*. (*Montoya, supra*, 86 Cal.App.4th at pp. 830-831.)

The court acknowledged that "a person could be mentally disordered for some purposes and not for others." (*Montoya, supra*, 86 Cal.App.4th at p. 831.) However, it noted that there the defendant's mind was not functioning normally, and he had repeatedly and recently demonstrated poor judgment and aberrant behavior. In upholding counsel's waiver, the court found "no reason to believe that defendant was capable of making a reasoned decision about the relative benefits of a civil jury trial compared to a civil bench trial." (*Ibid*.)

This brings us to *People v. Powell* (2004) 114 Cal.App.4th 1153, 1156 (*Powell*), which is directly on point. There, the NGI objected to counsel's waiver and requested a jury. When the court denied the request, the defendant became so argumentative, belligerent, and disruptive that he had to be removed from the courtroom. On appeal, the defendant claimed that counsel's waiver was ineffective because subdivision (b)(4) required his personal waiver. (*Id*. at pp. 1157-1158.)

In rejecting this claim, the court cited *Otis* and noted that "[t]he Legislature, in enacting section 1026.5, did not say that the jury waiver must be 'personally' made by the NGI committee." (*Powell, supra,* 114 Cal.App.4th at p. 1159.) Moreover, mirroring the *Otis* court's view concerning incompetent persons, the court opined generally that "[a]n insane person who is 'a substantial danger of physical harm to others' [citation] should not be able to veto the informed tactical decision of counsel." (*Id*. at p. 1158.) The court pointed out that the defendant had been found insane twice, medical staff had diagnosed him with paranoid schizophrenia, and there was no evidence he had regained his sanity. The court further noted that the defendant had a history of violence, believed certain people should be killed, and sought release to do so. (*Id*. at p. 1158.) The court asked, "Can such a person intelligently invoke or waive the right to a jury trial? Is such a person competent to meaningfully understand who should make the determination of

9

whether his commitment should be extended?" (*Ibid*.) The court answered, "Common sense dictates that appellant should not be able to veto his attorney's decision to waive a jury. The record demonstrates that appellant was suffering from a severe mental disorder. On the day of the purported demand for jury, appellant was medicated, experiencing mood swings, and was so belligerent and disruptive that he had to be removed from the courtroom." (*Ibid*.)

In support of its analysis, the court cited *People v. Angeletakis* (1992) 5 Cal.App.4th 963 (*Angeletakis*). There, the defendant faced a trial to extend his NGI commitment and sought a preliminary determination of his competence. (See § 1368.) The court noted that section 1368 did not apply in civil proceedings and opined that an NGI did not have to be competent at a trial to extend his or her commitment. (*Id*. at pp. 967-968; *Juarez v. Superior Court* (1987) 196 Cal.App.3d 928, 931-932 [same]; cf. *People v. Moore* (2010) 50 Cal.4th 802-829 [same re trial on SVP commitment].) As the court explained, "Angeletakis will be confined and receive treatment for his mental condition whether his commitment is extended under section 1026.5 or such proceedings are suspended under section 1368. While we appreciate the distinction between mental competence to stand trial and dangerousness to others due to a mental disease, defect, or disorder, we think the interests of a person facing a commitment extension are adequately protected by competent counsel and the other procedural safeguards afforded him. Requiring the court to suspend proceedings until the committee is able to understand the nature of the proceedings and assist in the conduct of his 'defense' adds minimal protection in this context, especially when balanced against the administrative burdens involved." (*Angeletakis, supra*, 5 Cal.App.4th at pp. 970-971, fn. omitted.)

The *Powell* court read *Angeletakis* "for the principle that an NGI committee who is not mentally competent must act through counsel. If the person is not competent to waive jury at the extension trial, his or her attorney may waive jury on his or her behalf. *That is the case here*." (*Powell, supra*, 114 Cal.App.4th at p. 1158, italics added.)

10

Sections 1026.5, 2966, and 2972 use the same language to address the same subject. The unanimity of interpretation in *Otis*, *Montoya*, and *Powell* reflects the established rule that ordinarily "[w]ords or phrases common to two statutes dealing with the same subject matter must be construed in pari materia to have the same meaning." (*Housing Authority v. Van de Kamp* (1990) 223 Cal.App.3d 109, 116; *People v. Lamas* (2007) 42 Cal.4th 516, 525.)

We agree with those courts' view of the statutory language. It does not expressly require a "personal" waiver by the NGI. The term "the person" in the phrase "unless waived by both the person and the prosecuting attorney" does not automatically or necessarily convey the notion that the only valid waiver is one "personally" made by the NGI. Nor does the waiver provision clearly reflect a legislative intent to impose such a limitation or preclude waivers by counsel on behalf of an NGI. Finally, we too observe that the Legislature knows how to require a personal waiver, and in doing so, it has used clear and unambiguous language. (E.g., § 861, subd. (a)(1) [requiring personal waiver of statutory right to continuous preliminary examination]; § 977, subd. (b)(1) [same re waiver of presence at arraignment]; Welf. & Inst. Code, § 1801.5 [same re right to a jury in trial to extend juvenile detention].)

Furthermore, interpreting the language to exclude waivers by counsel results in consequences that, in our view, are illogical and anomalous and therefore, to be avoided. (*People v. Martinez* (1995) 11 Cal.4th 434.)

First, we note that for a variety of reasons, NGIs being treated for mental illness in state hospitals often choose not to appear until the day of trial, courts do not automatically order them transported to court for every pretrial hearing, and counsel routinely waive the NGIs' presence at those hearings that often involve technical, procedural, and scheduling matters. Such was the case here. Given these practical and logistical issues, counsel must be able to act on the NGI's behalf in his or her absence. We cannot conceive of a logical reason to prohibit counsel from waiving a statutory right

11

to a jury trial at the NGI's direction or with the NGI's express authorization but in his or her absence. Doing so would compel the court to order the NGI's transportation and presence solely to secure a personal waiver. This is absurd. With a client's authorization, counsel can waive the more fundamental state *constitutional* right to a jury trial in civil actions. (Cal. Const., art. I, § 16 [right to jury trial]; see Code of Civ. Proc, § 631 [prescribing types of waiver]; *Zurich General Acc. & Liability Ins. Co. v. Kinsler* (1938) 12 Cal.2d 98, 105[waiver by party or counsel] (*Zurich*), overruled on other grounds in *Fracasse v. Brent* (1972) 6 Cal.3d 784, 792; *Cadle Co. v. World Wide Hospitality Furniture, Inc.* (2006) 144 Cal.App.4th 504, 510; *Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 148; see also Code Civ. Proc., § 283, subd. (1) [counsel has authority to bind client in any of the steps of an action].)

We further note that competency to stand trial is not a prerequisite in a civil proceeding to commit a person who is dangerous due to mental illness. (E.g., *People v. Angeletakis, supra,* 5 Cal.App.4th at pp. 967-968 [NGI commitment]; *People v. Moore, supra,* 50 Cal.4th at p. 829 [SVP commitment].) However, a waiver "is the 'intentional relinquishment or abandonment of a known right.' [Citations.]" (*United States v. Olano* (1993) 507 U.S. 725, 733; *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 521.) To be valid, the waiver of a statutory right must be knowing, intelligent, and voluntary. (*In re Hannie* (1970) 3 Cal.3d 520, 526-527; *People v. Charles* (1985) 171 Cal.App.3d 552, 559.) As *Otis, Montoya, and Powell* observe, some defendants, like the defendants in those cases, may be so delusional or otherwise affected by their mental disorders that they lack the capacity to know what is in their own best interests and make rational decisions. Under such circumstances, an NGI may not be able to knowingly and intelligently waive the right to a jury trial. If an NGI is incompetent, and in a particular case counsel believes that a jury waiver is in the NGI's best interests, requiring that defendant's personal waiver would prevent a waiver by counsel and thereby undermine counsel's ability to

12

protect the NGI's interests. Rather, it would mechanically require the court to conduct a jury trial or give the incompetent NGI veto power over counsel's informed determination.

In our view, preventing counsel from waiving a jury at an NGI's direction or with an NGI's consent and preventing counsel from doing so on behalf of an incompetent NGI are anomalous consequences that would flow from interpreting the waiver provision literally to require a personal waiver. For that reason, we consider it unreasonable to infer such a restrictive legislative intent from the statutory language. (Cf. *Mary K., supra*, 234 Cal.App.3d at p. 271 [rejecting claim that counsel's waiver at conservatee's direction was ineffective because personal waiver was required].)

Defendant argues that subdivision (b)(7) implicitly includes a personal waiver requirement. That subdivision provides, "The person shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees."

We acknowledge that the California and federal constitutions guarantee the right to a jury trial in criminal proceedings, and that right can only be waived personally by the defendant. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 16; *People v. Collins* (2001) 26 Cal.4th 297, 304-308; *People v. Ernst* (1994) 8 Cal.4th 441, 446.) However, every court that has analyzed the scope of subdivision (b)(7) has concluded that it does not incorporate *all* federal and State constitutional procedural rights. (*Williams, supra*, 233 Cal.App.3d at pp. 485-488; *Powell, supra*, 114 Cal.App.4th at pp. 1157-1158; *People v. Haynie* (2004) 116 Cal.App.4th 1224, 1229-1230 (*Haynie*); *People v. Lopez* (2006) 137 Cal.App.4th 1099, 1108-1116 (*Lopez*); see *People v. Henderson* (1981) 117 Cal.App.3d 740, 746-748 (*Henderson*) [same conclusion re identical language in former Welf. & Inst. Code, § 6316.2, subd. (e)]; cf. with *Joshua D. v. Superior Court* (2007) 157 Cal.App.4th 549, 560-561 [distinguishing § 1026.5, subd. (b)(7) from Welf. & Inst. Code, § 1801.5, which grants juveniles "*all* the rights guaranteed under the federal and state Constitutions for criminal proceedings" in commitment extension trials (italics added)].)

13

In *Williams, supra*, 233 Cal.App.3d 477, the court opined that the subdivision simply "codifies the application of constitutional protections to extension hearings mandated by judicial decision.  It does not extend the protection of constitutional provisions which bear no relevant relationship to the proceedings.  [Citation.]  Thus, for example, ex post facto principles are not applicable to extension proceedings.  [Citation.]  Neither is the privilege against self-incrimination applicable to court-ordered psychiatric examinations.  [Citations.]."  (*Id.* at p. 488; accord, *Lopez, supra,* 137 Cal.App.4th at pp. 1111-1115; cf. *Henderson, supra,* 117 Cal.App.3d at pp. 746-748.)  The court held that the provision also did not incorporate constitutional protection against double jeopardy.  The court reasoned that double jeopardy prohibitions were inapplicable because they are designed to protect a person from being criminally prosecuted more than once for the same offense.  Recommitment proceedings do not adjudicate an offense, thus the bar of double jeopardy ha[s] no meaningful application to extension proceedings.  (*Williams, supra*, 233 Cal.App.3d at pp. 485-486, 488.)[7]

---

[7] In *Williams*, the court explained that "Penal Code section 1026.5 was enacted in 1979, as emergency legislation in response to the California Supreme Courts decision of *In re Moye* [(1978) 22 Cal.3d 457].  Prior to *In re Moye*, individuals committed to state hospitals after having been acquitted by reason of insanity were committed for an indefinite period of time.  *In re Moye* concluded that equal protection principles mandated that such individuals be released after they had been committed for a period of time equal to the maximum state prison sentence which they could have received for the underlying offense.  Faced with the imminent release of many potentially dangerous individuals, the legislature adopted Penal Code section 1026.5 to provide for a maximum term of commitment, together with the possibility of successive two-year recommitments for dangerous individuals.  At the same time, the statutes relating to mentally disordered sex offenders (MDSO) were amended to provide for virtually identical procedures." (*Williams, supra*, 233 Cal.App.3d at pp. 487-488, fn. omitted.)

We have taken judicial notice of the legislative history of section 1026.5, which confirms *Williams'* summary.  (See Evid. Code, § 452, subd. (c).)

We further note that in *Lopez, supra*, 137 Cal.App.3d 1099, the court expanded on the legislative history of section 1026.5 as well as *Williams'* view that it merely codified judicial decisions.

*Powell, supra*, 114 Cal.App.4th 1153 is again on point.  There, the court agreed with *Williams* that subdivision (b)(7) does not incorporate all constitutional procedural safeguards and held it did not include the personal waiver requirement applicable in criminal cases.  As discussed above, the court opined that an incompetent NGI must act through counsel and therefore, counsel may waive a jury on his or her behalf.  (*Powell, supra,* 114 Cal.App.4th at pp. 1158-1159.)

We agree with *Powell.*  The absurd and anomalous consequences that would result from interpreting subdivision (b)(4) to require a personal waiver and exclude waivers by counsel would likewise result from interpreting (b)(7) to do so.  Indeed, subdivision (b)(3) provides the right to counsel, a jury trial, and criminal discovery.  Subdivision (b)(7) reflects an intent to protect a defendant's interests by providing additional procedural safeguards relevant to the proceedings.  In our view, it makes no sense to interpret the provision to prevent counsel from waiving a jury at the NGI's direction or with his or her knowledge and consent.  Similarly, it makes no sense to interpret a provision designed to provide *additional* protection in a way that could reduce counsel's ability to take action that would protect the interests of an NGI who is delusional or otherwise incompetent.

We agree with *Powell* for two other reasons.  Even in a criminal prosecution, where a defendant must personally waive the state and federal constitutional rights to a jury trial, there is no requirement that a *statutory* right to a jury determination of certain issues be personally waived.  (*People v. French* (2008) 43 Cal.4th 36, 46-47; see *Montoya, supra,* 86 Cal.App.4th at p. 829.)  Thus, for example, a defendant need not personally waive the statutory right to a jury on prior prison term allegations (*People v. Vera* (1997) 15 Cal.4th 269, 278, abrogated on another point in *Apprendi v. New Jersey* (2000) 530 U.S. 466); the statutory right to have jury determine sentence enhancement allegations (*People v. Wims* (1995) 10 Cal.4th 293, 309, overruled on another point in *People v. Sengpadyschith* (2001) 26 Cal.4th 316,326); the statutory right to have jury

15

determine competence to stand trial on criminal charges (*Masterson, supra*, 8 Cal.4th at p. 972); or the statutory right to have same jury determine current charges and prior allegations (*People v. Saunders* (1993) 5 Cal.4th 580, 589, fn. 5). (See also *People v. Hinton* (2006) 37 Cal.4th at 839, 874-875 [statutory right to a separate proceeding on the prior-murder-conviction special-circumstance allegation].)

Second, subdivision (b)(4) specifically deals with the waiver of a jury trial and it does not expressly require a personal waiver or prohibit a waiver by counsel. Subdivision (b)(7), on the other hand, is a general statute and does not specifically refer to any particular rights or the waiver of rights.

It is a settled rule that "[a] specific provision relating to a particular subject will govern a general provision, even though the general provision standing alone would be broad enough to include the subject to which the specific provision relates. [Citation.]" (*People v. Tanner* (1979) 24 Cal.3d 514, 521.) Under the circumstances, we doubt the Legislature intended the general subdivision (b)(7) to add by implication a personal waiver requirement that it did not expressly include in the specific subdivision dealing with the waiver of a jury trial.[8]

In sum, when construing statutes, "[w]e may not under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349; accord *Estate of Griswold* (2001) 25 Cal.4th 904, 917.) Nor may we insert requirements or limitations that would cause the statute to conform to a presumed intent that is not otherwise manifest in the existing statutory language. (*Citizens to Save*

---

[8] Even if subdivision (b)(7) incorporated the personal waiver requirement applicable in criminal cases, the requirement, it would still represent only a statutory requirement, not a constitutionally compelled requirement, and therefore, any statutory violation would be subject to review under the *Watson* test for harmless error.

*California v. California Fair Political Practices Com.* (2006) 145 Cal.App.4th 736, 747-748, *Tain v. State Bd. of Chiropractic Examiners* (2005) 130 Cal.App.4th 609, 617.)

Given our analysis of the statutory language, policy considerations, and potential consequences, we decline to insert a personal waiver requirement into section 1026.5. Rather, we conclude that under subdivision (b)(4), counsel may waive a jury at an NGI's direction, with an NGI's knowledge and consent, or, as in *Powell*, on behalf of an incompetent NGI.[9]

Defendant challenges the analysis in *Powell*. He notes that in rejecting a personal waiver requirement, the court also reasoned that "an insane person who is 'a substantial danger of physical harm to others' [citation] should not be able to veto the informed tactical decision of counsel." (*Powell, supra*, 114 Cal.App.4th at p. 1157.) Defendant argues that this reasoning led the *Powell* court to conclude, wrongly, that in commitment cases, counsel has blanket authority to waive a jury trial even over the defendant's objection. Indeed, the Attorney General asserts that *Powell* and a "well-established line of authority" establish that counsel has such exclusive control over the jury decision.

Although the waiver provision is broad enough to permit waivers by counsel, it does not necessarily follow, as the Attorney General asserts, that it gives counsel exclusive control. To determine whether it does, we return to subdivision (b)(4).

### B. Counsel's Exclusive Control

The statutory language "unless waived by both the person and the prosecuting attorney" does not expressly confer exclusive control; nor does it expressly or implicitly bar NGI's from controlling the decision to have a bench or jury trial. Moreover, the waiver provision must be read together with the advisement provision (see *Los Angeles*

---

[9] In the latter situation, we believe that counsel may do so even over the objection of an incompetent defendant. (E.g., *Powell, supra*, 114 Cal.App.4th at pp. 1156, 1158-1159; cf. *Otis, supra*, 70 Cal.App.4th at pp. 1176-1177 [waiver over objection of incompetent MDO]; *Masterson, supra,* 8 Cal.4th 965, 972 [waiver over objection of defendant whose competence has been called into question].)

17

*County Metropolitan Transp. Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106-1107), and together, they do not reasonably suggest a legislative intent to confer exclusive control or bar NGIs from making the decision. On the contrary, the two provisions contemplate that NGIs can make the decision and expressly provides for them to do so.

Specifically, subdivision (b)(3) requires the court to advise "the person named in the petition . . . of the right to a jury trial." This language imposes a mandatory duty on the court.[10] (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 ["shall" typically construed as mandatory; e.g., *People v. Tindall* (2000) 24 Cal.4th 767, 772.) It reflects a legislative intent to judicially ensure that "the person" knows that he or she has the right to a jury trial.

We presume that the Legislature intended the advisement to perform a meaningful and useful function. (See *Clements v. T.R. Bechtel Co.* (1954) 43 Cal.2d 227, 233.) The purpose and function appear in the waiver provision, which requires a jury trial unless waived by "the person." Although, subdivision (b)(4) must be construed to permit a waiver by "the person's" attorney, the phrase unambiguously refers to a waiver by the NGI. Thus, the purpose and function of the required advisement are self-evident: to inform the NGI of the right to a jury trial so that he or she can decide whether to waive it. (See *People v. Barrett* (2012) 54 Cal.4th 1081, 1109 (*Barrett*) [a jury advisement enables person to comprehend and control decision to request a jury trial]; *People v. Koontz* (2002) 27 Cal.4th 1041, 1071 [purpose of standardized *Faretta* advisements is "to ensure a clear record of a knowing and voluntary waiver of counsel"]; § 1016.5, subd. (d) [required advisement of potential immigration consequences intended to inform decision of whether to waive rights and enter plea].)

---

[10] We mean "mandatory" in its obligatory, rather than jurisdictional, sense as in a required, rather than discretionary, action. (See *Morris v. County of Marin* (1977) 18 Cal.3d 901, 908 [discussing distinction].)

We observe that if the Legislature had intended to give counsel exclusive control, it could have done so easily and clearly by requiring a jury trial unless waived by "the person's *attorney*" just as it specified a waiver by the "district attorney." (Cf. § 2966, subd. (b) [requiring hearing within specified time unless waived by "petitioner or his or her counsel].) Conversely, we doubt the Legislature would have clouded such an intent by requiring the court to advise "the person" and further requiring a jury trial unless waived by "the person." Moreover, if that had been the Legislature's intent, an advisement would serve no practical or meaningful function, and there would have been no need to make the advisement mandatory. For this reason, it is not reasonable to interpret the provision to confer exclusive control because it would effectively render the advisement provision meaningless, statutory surplusage. (See *McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110 [courts should avoid interpretation rendering part of the instrument surplusage].)

In short, just as we decline to limit the phrase "unless waived by the person" by inferring that only an NGI can waive a jury trial so too we decline to limit the phrase by inferring that counsel has exclusive control over the decision.

We acknowledge the nonstatutory, judicially recognized rule that "in both civil and criminal matters, a party's attorney has general authority to control the procedural aspects of the litigation and, indeed, to bind the client in these matters"; in other words, "counsel is captain of the ship." (*In re Horton* (1991) 54 Cal.3d 82, 94, 95; *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403-404.) We further note that in upholding counsel's waiver in *Otis,* the court cited *Zurich, supra,* 12 Cal.2d 98 for the general proposition that "in civil cases, an attorney has 'complete charge and supervision' to waive a jury." (*Otis*, *supra*, 70 Cal.App.4th at p. 1176.) However, we conclude that the general "captain of the ship" rule in civil litigation does not govern whether counsel has exclusive authority to waive a jury in NGI proceedings.

19

In *Zurich, supra*, 12 Cal.2d 98, the court held that counsel's insistence on a jury trial did not constitute good cause for firing him and thus bar him from later seeking a share of her judgment. Citing the general rule, the court concluded that the attorney had the right and authority to insist on a jury trial. (*Id*. at pp. 105-106.)

Although *Zurich* did not involve a jury waiver, the court cited a number of cases and authorities, including *Shores Co. v. Iowa Chemical Co.* (1936) 222 Iowa 347 [268 N.W. 581] (*Iowa*). There, the defendant claimed that counsel lacked the authority to waive a jury by stipulation. However, the court explained that ordinarily counsel has implicit authority to enter binding stipulations on procedural matters. It then noted that the defendant was aware of counsel's waiver at the time, he had made no effort to set it aside, and he did not seek a jury trial until long after the stipulation had been entered. Given these circumstances, the court held that the defendant had failed to show that counsel lacked authority to waive a jury trial. (*Id*. at p. 583.)

Although *Zurich* and the *Iowa* case recognized counsel's authority to request or waive a jury in typical civil litigation, neither case involved a "special proceeding" in which the state seeks to involuntarily commit a person to a state hospital for treatment. Moreover, neither case addressed whether counsel had such authority in a "special proceeding"; and neither case involved a statute that expressly required a jury advisement and jury trial unless waived by the person so advised.

" 'It is axiomatic,' of course, 'that cases are not authority for propositions not considered.' " (*People v. Jones* (1995) 11 Cal.4th 118, 123, fn. 2, quoting *People v. Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7.) Thus, these cases do not support a conclusion that in NGI proceedings, the "captain of the ship" rule gives counsel exclusive control over whether to waive a jury trial. Insofar as *Otis* appears to imply as much, we disagree.

*Masterson, supra*, 8 Cal.4th 965 is a much more pertinent case on the issue because it involved a special proceeding to determine whether the defendant was competent to stand trial on criminal charges. (§§ 1368-1370.) There, counsel stipulated

20

to an 11-person jury over the defendant's objection. In upholding counsel's authority to do so, the court more broadly concluded that in competency trials, counsel has exclusive control over the jury issue. The court noted the "captain of the ship" rule but did not base its conclusion on it. (*Masterson, supra,* 8 Cal.4th at pp. 969-970.) Rather, the court expressly based its conclusion on "an examination of the nature of competency proceedings as well as the jury trial right at issue." (*Id*. at p. 971.)

The court explained, "The sole purpose of a competency proceeding is to determine the defendant's present mental competence, i.e., whether the defendant is able to understand the nature of the criminal proceedings and to assist counsel in a rational manner. [Citations.] Because of this, the defendant necessarily plays a lesser personal role in the proceeding than in a trial of guilt. How can a person whose competence is in doubt make basic decisions regarding the conduct of a proceeding to determine that very question?" (*Masterson, supra*, 8 Cal.4th at p. 971.)

The court concluded that when doubt is raised about a defendant's competence, the defendant is assumed to be unable to act in his or her own best interests. For that reason, the defendant must act through counsel, and counsel has exclusive control over the conduct of the proceedings, including whether to request a jury trial. (*Masterson, supra*, 8 Cal.4th at pp. 971, 973; see *People v. Hill* (1967) 67 Cal.2d 105, 114, fn. 4 [no error in failing to advise defendant of right to jury in competence trial because counsel decides whether to have a jury trial].)

Under *Masterson*, therefore, if counsel has exclusive control in NGI proceedings, counsel derives it not so much from the "captain of the ship" rule but from the nature of those proceedings and the jury right at issue.

More recently, in *Barrett, supra,* 54 Cal.4th 1081, the Supreme Court provided further guidance when it decided whether counsel had exclusive control in a proceeding to commit a mentally retarded person who is dangerous. (Welf. & Inst. Code, § 6500.)[11]

In *Barrett*, the court conducted a bench trial and committed the defendant. (*Barrett, supra,* 54 Cal.4th at pp. 1088-1092.) On appeal, she claimed that the federal Constitution provided the right to a jury trial and required a jury advisement and personal waiver. (*Id*. at p. 1093.) Although the statute did not provide the right to a jury trial, the Supreme Court agreed that constitutional considerations warranted recognizing an implied statutory right to a jury trial. (*Id*. at pp. 1097, 1100.) However, the court rejected advisement and waiver requirements because it found that counsel had exclusive control over whether to have a jury trial. In reaching this conclusion, the court relied primarily on *Masterson.*

The court explained that mental retardation is a developmental disability that originates when an individual is a minor and continues, or can be expected to continue, indefinitely, and constitutes a " 'substantial disability for that individual.' " (*Barrett, supra*, 54 Cal.4th at p. 1103.) Moreover, for purposes of a commitment under section 6500, mental retardation involves " ' " ' *significantly subaverage general intellectual functioning* existing concurrently with deficits in adaptive behavior,' and appearing in the 'developmental period.' " ' [Citations.]" (*Ibid*., italics in *Barrett*) The court opined that "the significant cognitive and intellectual deficits that the condition entails, which appear

---

[11] The *Barrett* court noted that at all pertinent times, the statutory scheme had used the terms "mentally retarded" and "mental retardation." The court acknowledged that subsequent "legislative enactments and proposed amendments replace references to 'mental retardation' under section 6500 et seq. with such terms as 'developmental disability' and 'intellectual disability.' [Citation.]" (*Barrett, supra*, 54 Cal.4th at p. 1088, fn. 2.) However, to avoid confusion, the court used the original terminology.

To avoid confusion when discussing *Barrett* and its application, we shall also use that outmoded terminology.

At our request, the parties briefed the impact of *Barrett*, if any, on the issues raised in this case.

early in life and never recede, affect the ability to 'make basic decisions' regarding the conduct of the section 6500 proceeding. [Citation.] Such an individual thus plays a limited 'personal role' in the case, and must rely on counsel to decide all tactical and procedural matters, such as whether to exercise the jury trial right." (*Id*. at pp. 1103-1104.)

The court rejected a claim that this approach "improperly 'presumes' that a person is mentally retarded before the fact finder has decided the issue." (*Barrett, supra*, 54 Cal.4th at p. 1104.) The court noted that a commitment petition is filed at the request of "a responsible and interested party (e.g., parent, conservator, correctional or probation official, or regional center director), who presents specific information (reasons) for supposing that the person is mentally retarded and dangerous, in need of treatment, and eligible for commitment. The significance of this request, and its role in providing a foundation for the petition and commitment process, is underscored by the verification requirement. (§ 6502.) . . . [¶] Second, where a section 6500 petition is filed, the trial court is entitled to a written report prepared by, or at the behest of, the director of the regional center, following an examination of the alleged mentally retarded person. (§ 6504.5.) Regional centers specialize in assessing and assisting mentally retarded and other developmentally disabled persons on an individual basis. [Citation.] Thus, the regional center report obviously serves as a professional pretrial evaluation of the person's history, condition, and behavior, and includes informed recommendations on treatment and placement, including any interim placement pending the hearing. . . . [¶] In light of these principles and authorities, we conclude that someone like Barrett, who is alleged to be mentally retarded and dangerous under section 6500, is not in a position to personally assert or waive the right to jury trial, to sufficiently comprehend the jury trial advisement, or to override the views of counsel on the subject. Sole control over such tactical and procedural decisions rests with counsel, whether or

23

not the client has been consulted or objects." (*Barrett, supra*, 54 Cal.4th at pp. 1104-1105.)

Masterson and *Barrett* establish that in certain types of commitment proceedings, the defendant's alleged mental state—e.g., incompetency and mental retardation—disables him or her from making reasoned decisions about what is in his or her best interests, including whether to request or waive a jury trial. In other words, it is reasonable to categorically assume that such defendants lack the capacity to make a rational decision about a jury trial. For that reason, they must act through counsel, and counsel has exclusive control over the jury issue.

The Attorney General relies on *Masterson* to support her claim that counsel has exclusive control in NGI proceedings. Presumably, the argument is that, like defendants whose competence has been questioned or persons diagnosed with mental retardation, NGIs are categorically unable to make reasoned decisions, and therefore counsel must be able to decide the jury issue. We reject this argument and find the Attorney General's reliance on *Masterson* to be misplaced.

First, there are significant differences between an NGI extension trial and the proceedings in *Masterson* and *Barrett.* The purpose of a competency trial is to resolve actual doubt concerning the defendant's mental capacity to understand the proceedings and cooperate with and assist counsel. (*People v. Lewis* (2008) 43 Cal.4th 415, 524.) Thus, as *Masterson* holds, once a defendant's competency is doubted, counsel has control over whether to request a jury for the competency trial.

The proceeding in *Barrett* did not involve a determination of competency but whether the mentally retarded defendant was dangerous. However, as *Barrett* explains, mental retardation in this context represents a permanent developmental disability involving significant cognitive and intellectual deficits. For this reason, the court treated the allegations and supporting documentation that a person is mentally retarded like doubt concerning a defendant's competency to stand trial. In other words, the mentality

of persons in both contexts is comparable, both may be assumed to be incapable of determining their own best interests, and therefore the scope of counsel's authority should be the same.

Unlike a competency trial, an NGI extension trial does not involve a determination of competency. Its purpose is to determine whether an NGI is currently dangerous due to a severe mental disorder that is not in remission. (§ 2970.) To be sure, that is the same purpose of a trial to commit a dangerous mentally retarded person. However, the similarity of purpose does not mean that the scope of counsel's authority should be the same because the mental capacity of the persons in each context is different. More specifically, although it may be reasonable to categorically assume that mentally retarded persons lack the capacity to determine their own best interests, it is not reasonable to make that categorical assumption about NGIs. *Barrett* makes this precise point.

Concerning the capacity to function in a competent manner, and specifically to comprehend a jury advisement and rationally control the jury decision, the *Barrett* court distinguished those diagnosed with a mental disease, defect, or disorder from those diagnosed with mental retardation.

In *Barrett*, the defendant claimed that the constitution required a jury advisement and personal waiver under principles of equal protection. She noted that patients facing an extended commitment under the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.) because they posed a danger due to their mental disease, defect, or disorder rendered were statutorily entitled to such procedural safeguards. (*Barrett, supra*, 54 Cal.4th at p. 1106; see Welf. & Inst. Code, § 5302.) Because she and LPS patients were similarly situated, she claimed the right to those safeguards.

In rejecting her claim, the court explained that persons subject to commitment under the two schemes are not "similarly situated as to the ancillary purpose that an express jury trial advisement, and an express personal waiver, purportedly serve," namely enabling the person to comprehend and control the decision to waive a jury trial.

25

(*Barrett, supra*, 54 Cal.4th at p. 1108.)  What distinguished persons under the two schemes was their "distinct 'mentality' "—i.e., mental retardation versus mental illness. (*Ibid*.)  The court explained that "[m]ental illness and related disorders are said to be conditions that may arise suddenly and, for the first time, in adulthood.  [Citation.]  The LPS Act process itself assumes that the need for treatment may be temporary, and that disabling mental disorders may be intermittent or short-lived.  [Citation.]  [¶]  In addition, because of the complexity of human behavior, and the lack of a long history in every case, mental illness and related disorders may be difficult to diagnose.  [Citations.]  Where present, however, ' "mental illness 'often strikes only limited areas of functioning, leaving other areas unimpaired, and consequently . . . *many mentally ill persons retain the capacity to function in a competent manner*.' " '  [Citation.]  [¶]  These characteristics suggest that the mental conditions that create eligibility for an extended 180-day LPS Act commitment, though they include imminent dangerousness, *do not necessarily imply incompetence or a reduced ability to understand, and make decisions about, the conduct of the proceedings*.  Hence, nothing compels the conclusion that such LPS Act patients will not benefit by the statutory right to a jury trial advisement set forth in section 5302.  By contrast, in the case of persons alleged to be mentally retarded and dangerous under section 6500, the commitment process itself raises substantial doubts about their cognitive and intellectual functioning sufficient to limit the personal and procedural role they play.  It follows that the two groups are not similarly situated as to the function that Barrett implies an advisement like section 5302 serves—*comprehending and controlling the decision whether to request a jury trial*.  Thus, any disparate statutory treatment with respect to jury trial advisements does not deprive persons like Barrett of equal protection of the law." (*Barrett, supra*, 54 Cal.4th at pp. 1108-1109, first italics in *Barrett,* second italics added.)[12]

_____

[12]  In 1981, the court in *Cramer v. Gillermina R., supra,* 125 Cal.App.3d 380 similarly held that because mental illness and mental retardation are separate and distinct

The court's discussion recognizes that unlike defendants whose competence is questioned or persons diagnosed with mental retardation, those suffering from a mental illness can comprehend and control the decision to waive a jury trial. In this regard, *Barrett's* view mirrors the implicit legislative finding underlying the statutory requirements of an advisement and jury trial unless waived that an NGI can decide wither to waive a jury trial. Moreover, these requirements further distinguish *Masterson* and *Barrett* because the statutes in those cases do not mandate an advisement or jury trial unless waived; rather, a jury trial must be demanded. (*Barrett, supra,* 54 Cal.4th at p. 1097; *People v. Rojas* (1981) 118 Cal.App.3d 278, 287; *People v. Hill*, *supra*, 67 Cal.2d at p. 114 [under former § 1368]; e.g., *People v. Superior Court* (*McPeters*) (1985) 169 Cal.App.3d 796, 798.)

Finally, *Barrett's* view that having a mental disorder does not categorically render one incapable of determining what is in his or her own best interests is not particularly unique or unprecedented. In *John L., supra,* 48 Cal.4th 131, the court observed that despite having mental disorders, conservatees are not, by reason of their conservatorship, automatically considered incompetent to waive their rights. (*Id*. at p. 153.) In *Qawi, supra,* 32 Cal.4th 1, the court opined that "[a]lthough an MDO must be determined to have a 'severe mental disorder,' commitment for a mental disorder does not by itself mean that individuals are incompetent to participate in their own medical decisions. [Citations.]" (*Id*. at p. 24.) In *People v. Wolozon* (1982) 138 Cal.App.3d 456, the court held that despite a finding of NGI and evidence of a mental disorder that rendered the defendant dangerous, the defendant had the right to waive counsel and represent himself. (*Id*. at pp. 460-461.) Similarly, in *People v. Williams, supra,* 110 Cal.App.4th 1577, the

___

conditions which require different treatment and/or habilitation," their differing statutory schemes did not violate equal protection. (*Id*. at pp. 387-388; accord, *People v. Quinn* (2001) 86 Cal.App.4th 1290, 1294-1295.)

court recognized that a defendant has the statutory right to waive counsel and represent himself in a trial to extend his MDO commitment. (*Id*. at pp. 1587-1592.)

In addition to *Masterson*, the Attorney General relies on *Otis* and *Powell* to support her claim that counsel has exclusive control. However, reliance on those cases is equally misplaced.

*Otis* and *Powell* must be viewed in light of their particular facts and the issues raised in them. (See *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 ["language used in any opinion is of course to be understood in the light of the facts and the issue then before the court"].) As noted, in *Otis*, the defendant was delusional, and the court upheld counsel's jury waiver over the defendant's objection, opining that the defendant was not capable of making a reasoned decision. (*Otis*, *supra*, 70 Cal.App.4th at pp. 1175-1176.) Likewise, the court in *Powell* upheld counsel's waiver over the defendant's objection because the defendant was medicated and his disruptive conduct demonstrated his incompetence. (*Powell, supra,* 114 Cal.App.4th at p. 1158.)

Given the particular facts concerning the mental state of the defendants in those cases, we read them for the proposition that when it reasonably appears that an MDO or NGI is incapable of determining whether a bench or jury trial is in his or her best interests, he or she must act through counsel, and counsel has exclusive authority to decide even over an objection. In this regard, the cases reflect the *Masterson-Barrett* rationale for recognizing counsel's exclusive authority in proceedings to determine competency and the dangerousness of a mentally retarded person. In our view, *Otis* and *Powell* should not be read more broadly as holding that counsel controls the jury issue regardless of whether the MDO or NGI is competent. This is especially so because neither case discussed the purpose and function of the mandatory jury advisement.

## C. Validity of Counsel's Waiver

We consider it helpful at this point to summarize our resolution of the parties' interlocking but opposing claims and our conclusion concerning the meaning of the

28

waiver provision and the scope of counsel's authority. Section 1026.5 does not require an NGI's personal waiver or give counsel exclusive control over the jury decision. Rather, counsel can waive a jury trial at the NGI's direction or with his or her knowledge and consent; and counsel can also do so even over an NGI's objection when the circumstances cast reasonable doubt on the NGI's competence to determine what is in his or her best interests.

With this in mind, we note the "well established rule in this state that 'an appellate court will never indulge in presumptions to defeat a judgment. It will never presume that an error was committed, or that something was done or omitted to be done which constitutes error. On the contrary, every intendment and presumption not contradicted by or inconsistent with the record on appeal must be indulged in favor of the orders and judgments of superior courts.' [Citation.]" (*Walling v. Kimball* (1941) 17 Cal.2d 364, 373, italics added; accord, *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 261; *People v. Giordano* (2007) 42 Cal.4th 644, 666; see Code Civ. Proc. § 475.) Accordingly, the appellant bears the burden to affirmatively establish error and then demonstrate that it resulted in a miscarriage of justice that requires reversal. (*Cucinella v. Weston Biscuit Co.* (1954) 42 Cal.2d 71, 82; *Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 528; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105-106; *Thompson v. Thames* (1997) 57 Cal.App.4th 1296, 1308; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 355, p. 409 [presumption of correctness; "error must be affirmatively shown"].)

Here, the record is silent concerning whether defendant was in fact aware of his right to a jury trial in this proceeding and whether he knew about, directed, authorized, or objected to counsel's waiver. Under the circumstances, defendant cannot possibly satisfy his burden to show that counsel's waiver was invalid and therefore that the court erred in conducting a bench trial.

Nor could defendant establish that the court's alleged errors in accepting counsel's waiver and conducting a bench trial were prejudicial. It is settled that the denial of the

statutory right to a jury trial is subject to harmless-error review under the *Watson* test. (*People v. Epps* (2001) 25 Cal.4th 19, 29.)  Thus, even if the record established that counsel's waiver was invalid, our previous analysis and conclusion that the failure to advise was harmless would apply with equal force to the denial of a jury trial.  Simply put, given the testimony at defendant's trial, we do not find it reasonably probable a jury would have returned a more favorable verdict.  (E.g., *People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1276 [given evidence, denial of statutory right to MDO trial harmless].)

## VI.  CONSTITUTIONAL CLAIMS

Defendant contends that in conducting a bench trial, the court denied him his constitutional right to a jury trial under the state and federal due process and equal protection clauses.

### A.  Due Process

Defendant asserts that if section 1026.5 did not provide the right to a jury trial, he would still have the right under the state and federal constitutional guarantees of due process.  He argues that the court's procedure in this case violated this constitutional right.  However, since there is a statutory right, defendant's due process claim is based upon an assumption which is contrary to the state of existing law.  We will not decide theoretical constitutional questions which are based upon faulty premises.  (*People v. Moore* (2011) 51 Cal.4th 1104, 1123 [rejecting equal protection argument based on faulty premise]; *People v. Low* (2010) 49 Cal.4th 372, 393, fn. 11 [due process claim challenging state's actions rejected where argument based upon faulty premise that defendant committed no unlawful act]; *Berardi v. Superior Court* (2008) 160 Cal.App.4th 210, 228 [court will not decide "hypothetical or other questions of constitutional law unnecessary to our disposition of the case"].)

Moreover, we note that in *Montoya,* 86 Cal.App.4th 825, the court rejected the MDO's claim that the federal due process clause guaranteed an MDO the right to a jury

30

trial. " 'Where . . . a State has provided for the *imposition of criminal punishment* in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, [citation], and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.' [Citation.] A jury sitting in a civil hearing pursuant to sections 2970 and 2972 does not impose criminal punishment and has no power to determine the extent to which the defendant will be deprived of his liberty. Defendant's jury trial interest thus is, in this case, 'merely a matter of state procedural law' and does not implicate the Fourteenth Amendment. [Citation]." (*Id*. at pp. 831-832, quoting *Hicks v. Oklahoma* (1980) 447 U.S. 343, 346 (*Hicks*).)

In *Powell, supra*, 114 Cal.App.4th 1153, which is on point, the court similarly held that "[b]ecause the jury does not impose criminal punishment and has no power to determine the extent to which the person will be deprived of his or her liberty, a waiver of jury trial through counsel does not violate the person's constitutional right to jury trial. [Citations.] We reject the argument that the jury waiver was ineffective or violated appellant's due process rights." (*Id*. at p. 1159.)[13]

---

[13] Defendant cites *In re Gary W.* (1971) 5 Cal.3d 297 (*Gary W.*), *People v. Feagley* (1975) 14 Cal.3d 338 (*Feagley*), *People v. Thomas* (1977) 19 Cal.3d 630 (*Thomas*), and *In re Hop* (1981) 29 Cal.3d 82 for the proposition that due process guarantees the right to a jury trial in commitment cases.

In these cases, the court found that persons facing involuntary commitment under statutory schemes that did *not* provide for a jury trial were similarly situated to persons facing commitment under schemes that provided a jury trial upon request. Under the equal protection clause, the former group was entitled to a request a jury trial unless there is a valid justification for not allowing them to do so. Where there was no such valid justification, the unequal treatment was arbitrary and violates due process. However, none of these cases separately analyzed whether apart from prohibiting the arbitrarily and different treatment of similarly situated persons the due process clause independently

31

Citing *Hicks, supra,* 447 U.S. 343, defendant argues that *Powell* did not address his due process claim based on the notion that he was arbitrarily deprived of his statutory right to a jury trial.

It is true that defendant had the statutory right to a jury advisement. However, he was not arbitrarily deprived of that right. Counsel waived defendant's presence at every hearing before trial. Defendant also had the right to a jury trial. However, he was not arbitrarily deprived of that right either. Rather, counsel waived it. Again, we do not presume error, and, as noted, because defendant has not shown that counsel's waiver was unauthorized or otherwise invalid, he can no more show a constitutional violation than he could show a statutory violation. Accordingly, we reject defendant's due process claim.

## B. Equal Protection

Defendant asserts that in every scheme permitting the involuntary commitment of a person for mental health purposes, there is a right to a jury trial. He further asserts that an NGI defendant facing an extended commitment is similarly situated to persons facing a commitment under these other schemes. Thus, he claims that in conducting a bench trial here, the court denied him equal protection. Defendant's claim fails because section 1026.5 provides defendant with the right to a jury trial, and counsel waived that right. Thus, as the Attorney General points out, defendant fails to identify how he was treated differently from how he would have been treated under any of the other commitment schemes.

---

guaranteed persons subject to civil commitment the right to a jury trial. Accordingly, we find defendant's reliance on them misplaced.

32

## VII.  DISPOSITION

The order extending defendant's commitment is affirmed.

_____
RUSHING, P.J.

I CONCUR:

_____
PREMO, J.

ELIA, J., Concurring:

I respectfully concur in the judgment on the ground no reversible error has been shown. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [all intendments and presumptions are indulged to support a judgment or order regarding matters as to which the record is silent; error must be affirmatively shown]; cf. *Conservatorship of John L.* (2010) 48 Cal.4th 131, 148 ["When a statutory right in a civil commitment scheme is at issue, the proposed conservatee may waive the right through counsel if no statutory prohibition exists. (E.g., *People v. Rowell* (2005) 133 Cal.App.4th 447, 452-454 . . . [in sexually violent predator recommitment proceeding, trial court properly accepted counsel's representation that client wanted court trial instead of jury trial]; [*Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265,] 271 . . . .)"].)

On the record before us, we must presume for purposes of this appeal that appellant's counsel informed him that he had a right to be tried by a jury and counsel waived a jury in accordance with appellant's informed wishes (see maj. opn., *ante*, pp. 1, 4-5, 29). (See *Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564; see also *Conservatorship of John L., supra,* 48 Cal.4th at pp. 151-152 [attorney is obligated to keep client fully informed of proceedings, to advise client of his rights, and to refrain from any act or representation that misleads the court].) Even assuming arguendo that appellant had a constitutional right to a jury trial, the same presumption applies. To the extent appellant may be also arguing that he had a separate due process right, under either the United States or California Constitution, to a judicial advisement of his right to a jury trial and to personally and expressly waive a jury on the record, his arguments are not persuasive.

This case does not present the issue, and it is unnecessary for this court to decide, whether appellant, if competent, was entitled to make the final decision regarding waiver of a jury or whether appellant's counsel had authority to waive a jury without appellant's

approval or over appellant's objection.  There is no call for us to decide in this case the exact extent of a counsel's authority to waive a jury for trial on a petition for extended commitment pursuant to Penal Code section 1026.5, subdivision (b).  "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."  (*Mills v. Green* (1895) 159 U.S. 651, 653 [16 S.Ct. 132]; see *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.)


_____


ELIA, J.


*People v. Fuquay*


H037195


2

| Trial Court: | Santa Clara County<br>Superior Court No.:  C9945301 |
| --- | --- |

| Trial Judge: | The Honorable Gilbert T. Brown |
| --- | --- |

| Attorney for Defendant and Appellant<br>Maxwell Martin Fuquay: | Julia Freis<br>under appointment by the Court of<br>Appeal for Appellant |
| --- | --- |

| Attorneys for Plaintiff and Respondent<br>The People: | Kamala D. Harris<br>Attorney General |
| --- | --- |
| | Dane R. Gillette,<br>Chief Assistant Attorney General |
| | Gerald A. Engler,<br>Senior Assistant Attorney General |
| | Laurence K. Sullivan,<br>Supervising Deputy Attorney General |
| | Rene A. Chacon,<br>Deputy Attorney General |

*People v. Fuquay*
**H037195**